UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ARTHUR L. BALL,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>)<br>**NATIONSTAR MORTGAGE, LLC,** )<br>**MORTGAGE ELECTRONIC** )<br>**REGISTRATION SYSTEMS, AND** )<br>)<br>**FREMONT INVESTMENT AND LOAN** )<br>**Defendants.** )<br>) | **CIVIL ACTION**<br>**NO. 11-40086-TSH** |

**MEORANDUM AND ORDER ON DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT**
September 30, 2013

**HILLMAN, District Judge.**

**Introduction**

This is a civil action arising out of the refinancing of the real estate located at 61 Barry Road in Worcester, Massachusetts. On September 28, 2010, Plaintiff Arthur Ball (Plaintiff), filed the Complaint with the United States Bankruptcy Court for the Central District of Massachusetts ("the Bankruptcy Court"). Defendants filed a Motion for Withdrawal with the Bankruptcy Court, which motion was subsequently granted. Defendants Signature Group Holdings, Inc, successor in interest to Fremont Reorganizing Corporation f/k/a Fremont Investmnet & Loan (Fremont) and Mortgage Electronic Registration Systems, Inc. (MERS) each filed Motions for Summary Judgment (Docket Nos. 23 and 21). In his eight count Complaint, the Plaintiff contends that Defendants violated the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D §

12 (MCCCDA) by not providing Plaintiff with accurate Truth-in-Lending disclosures, entitling him to recission of the loans; alleges a violation of the Massachusetts's Good Funds Statute, M.G.L. c.183 §63B (the "Good Funds Statute"); and further alleges a violation of violation of M.G.L. c. 93A, based upon Defendant Fremont's alleged violation of M.G.L. c. 140D.  After holding a hearing, I took the present matter under advisement. Accordingly, for the reasons set forth below, Defendants' Motions for Summary Judgment are GRANTED.

## Background

The basic facts underlying the present matter are not in dispute. On or about April 27, 1977, Lucile V. Andrews (Andrews) purchased 61 Barry Road, Worcester, Massachusetts (the Property).  On July 24, 1998, Andrews conveyed the Property to herself and Arthur L. Ball as tenants-in-common.  Plaintiff and Andrews entered into a refinance transaction with Fremont Investment and Loan on or about October 23, 2006, which consisted of two loans. The purpose of the Loans was to refinance the existing mortgages on the Property upon more favorable terms and to pay off outstanding credit card balances. The first loan was memorialized with a note to Fremont and mortgage to MERS (as nominee for Fremont and Fremont's successors and assigns), both in the face amount of $240,800.00. The second mortgage loan was memorialized with a note to Fremont and mortgage to MERS (as nominee for Fremont and Fremont's successors and assigns), both in the face amount of $60,200.00. The Plaintiff received and signed Truth in Lending Statements for both loans.

The Truth in Lending Statement (TIL) for the first loan disclosed a Finance Charge of $695,571.47. As shown on the TIL for the first loan, the Total Payments was derived by adding the 24 payments of $1,485.84 ($35,660.16), 335 payments of $2,038.97 ($683,054.95) and one balloon payment of $211,522.36 – for total Payments of $930,237.47.

The first loan note also included a balloon payment feature giving plaintiff the option of either (1) making the $211,522.36 balloon payment on the original maturity date or (2) extending the maturity date and paying the balloon balance over an additional 20 years. Subtracting the Amount Financed ($234,666.00) from the Total Payments ($930,237.47) resulted in the disclosed Finance Charge of $695,571.47. The Itemization for the first loan subtracted $6,134.00 of prepaid charges from the $240,800.00 loan amount to derive an Amount Financed of $234,666.00. Plaintiff gave requested to rescind the first loan on or about December 9, 2009.

The TIL for the second loan disclosed a Finance Charge of $136,946.84. As shown on the TIL for the second loan, the Total Payments was derived by adding the 359 payments of $541.69 ($194,466.71) and one payment of $546.18 to derive Total Payments of $195,012.89. Subtracting the Amount Financed ($58,066.05) from the Total Payments ($195,012.89) resulted in the disclosed Finance Charge of $136,946.84. The Amount Financed as shown on the TIL for the second loan was calculated as shown on the Itemization of Amount Financed. The Itemization for the second loan subtracted $2,133.95 of prepaid charges from the $60,200.00 loan amount to derive an Amount Financed of $58,066.05.

Plaintiff received notice of the sale of the Loans and transfer of servicing rights for the Loans in June, 2007. Plaintiff had no contact with Fremont and/or Signature after the date of the transfer of the Loans, July 5, 2007 and did not attempt to rescind the loans at that time. The first and second loans were due to be funded on October 27, 2006. The mortgages for the first and second loans were recorded on October 26, 2006. At the time of the sale of the Loans and transfer of the servicing rights, Plaintiff was current in his payment obligations under the Loans.

On or about December 11, 2009, Plaintiff signed a Nationstar Mortgage Payment

Worksheet in connection with the application for a loan modification. The Nationstar Mortgage Payment Worksheet lists the monthly payment on the First Loan as $1,875.00 and the monthly payment on the Second Loan as $541.00. In February, 2010, Plaintiff filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the District of Massachusetts in Worcester. Plaintiff has not made any payment on the Loans since November, 2008.

On September 28, 2010, Plaintiff filed an Adversary Complaint in eight counts, commencing an Adversary Proceeding in Bankruptcy Court. On November 24, 2010, the United States Bankruptcy Court granted Signature's motion to withdraw the Complaint to the United States District Court for the District of Massachusetts.

### Standards of Review

**A. Summary Judgment**

Summary judgment is a dispositive motion used "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The moving party carries the initial burden of directing the court to specific pleadings, affidavits or discovery in order to demonstrate "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009). A dispute is "genuine" when there is "sufficient evidence to permit a reasonable trier of fact to resolve the issue in the nonmovant's favor." *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994). Furthermore, a fact is "material" if it "has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996).

"Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002). The court must view the evidence in a "light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir. 2001) (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)). Thus, conflicting evidence in the record "favor[ing] in some lights the defendant[] and in others the plaintiff" is best left for a jury "to determine which version of the facts is most compelling." *Sensing*, 575 F.3d at 153 (citing *Calero-Cerezo*, 355 F.3d at 19).

The Court applies this standard to each of Plaintiff's claims proffered in the Complaint.

### B. Truth in Lending Law

Plaintiff's claims involve the MCCCDA, which was modeled after the federal Truth in Lending Act ("TILA"), *McKenna v. First Horizon Home Loan Corp.,* 475 F.3d 418, 422 (1st Cir. 2007); *Lynch v. Signal Fin. Co. of Quincy,* 367 Mass. 503, 327 N.E.2d 732, 734 (1975), and because they are substantially similar, the federal courts construe Massachusetts credit statute "in accordance with" TILA, *McKenna,* 475 F.3d at 422, absent reason to do otherwise. *See In re Fuller*, 642, F.3d 240, 241 (1st Cir. 2011).

The MCCCDA specifically provides that an overstatement in the finance charge is treated as accurate for purposes of the statute:

> **(f)** In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge-- **(1)** shall be treated as being accurate for the purposes of this chapter if the amount disclosed as the finance charge—
>
>> (a) does not vary from the actual finance charge by more than one hundred dollars; or
>> (b) is greater than the amount required to be disclosed under this chapter;....

M.G.L. c. 140D § 4(f)(1)(b); *see also Alicea v. Citifinancial Services, Inc,.* 210 F. Supp. 2d 4, 7-8 (D. Mass. 2002). Furthermore, the corresponding regulation confirms that the finance charge and the annual percentage rate are considered accurate if overstated:

> (7) Tolerances for Accuracy.
>
>> (a) One-half of 1 Percent Tolerance. Except as provided in 209 CMR 32.23(7)(b) and (8)(b), the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of 209 CMR 32.23(7) if the disclosed finance charge:
>>
>>> 1. is understated by no more than 1/2 one percent of the face amount of the note or $ 100, whichever is greater; or
>>> 2. is greater than the amount required to be disclosed.

209 CMR 32.23. The statute and regulation specifically applicable to foreclosures also provides:

> **(2)** Notwithstanding the provisions of subsection (f) of section four, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for the purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than thirty-five dollars or is greater than the amount required to be disclosed under this chapter.

M.G.L. c. 140D §10(i)(2).

> (8) Special Rules for Foreclosures.
>
>> (b) Tolerance for disclosures. After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of 209 CMR 32.23 if the disclosed finance charge is:
>>
>>> 1. Is understated by no more than $ 35; or
>>> 2. Is greater than the amount required to be disclosed.
>>> 209 CMR 32.23.

**DISCUSSION**

Counts I and IV of the Complaint allege that Fremont did not provide Plaintiff with accurate Truth-in-Lending disclosures in violation of the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D § 12 ("MCCCDA"). Plaintiff contends that both the Annual Percentage Rates and the amount of Finance Charges disclosed are inaccurate and therefore, he is entitled to rescind the loans and gain title to the property.

### A. Truth in Lending Disclosures as to the First Loan

Fremont disclosed a finance charge of $695,571.47 on the first loan. Plaintiff alleges that the finance charge disclosed was inaccurate because the Amount Financed was incorrect. Specifically, plaintiff alleges that Amount Financed should have been disclosed as $236,341. *See* Complaint, ¶ 29. Assuming that plaintiff is correct, an Amount Financed of $236,341 subtracted from Total Payments of $930,237.47 would have resulted in a Finance Charge of $693,896.47. Since Fremont disclosed a Finance Charge of more than plaintiff claims should have been disclosed. Assuming Plaintiff's calculations are correct, this indicates that the Finance Charge may have been overstated at the closing of the Loans. The MCCCDA specifically provides that an overstatement in the finance charge is treated as accurate for purposes of the statute. Under 209 CMR 32.23(7), "the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for the purposes of 209 CMR 32.23(7) if the disclosed finance charge: 1. is understated by no more than ~ one percent of the face amount of the note. . .; or 2. is greater than the amount required to be disclosed." Because the finance charge disclosed on the TIL for the first loan ($695,571.47) was greater than the amount plaintiff alleges was required to be disclosed ($693,896.47), the disclosures are deemed accurate under 209 CMR 32.23(7) and plaintiff is not entitled to the

extended four-year rescission period.  S*ee also Alicea v. Citifinancial Services, Inc,.* 210 F. Supp. 2d 4, 7-8 (D. Mass. 2002).

### B.  Truth in Lending Disclosures as to the Second Loan

Similarly, Fremont did not violate the MCCCDA with regard to its disclosures on the second loan. Fremont disclosed a finance charge of $136,946.84 on the second loan. Plaintiff alleges that the finance charge disclosed was inaccurate because the Amount Financed was incorrect. Specifically, Plaintiff alleges that Amount Financed should have been disclosed as $59,816.05. *See* Complaint, ¶ 61. Assuming that Plaintiff is correct, an Amount Financed of $59,816.05 subtracted from Total Payments of $195,012.89 would have resulted in a Finance Charge of $135,196.84. Fremont disclosed a Finance Charge of more than plaintiff claims should have been disclosed.

As discussed above, pursuant to 209 CMR 32.04, a finance charge disclosure and other disclosures affected by the finance charge (including the APR) are deemed accurate if they are greater than the amount required to be disclosed. Because the finance charge disclosed on the TIL for the second loan ($136,946.84) was greater than the amount plaintiff alleges was required to be disclosed ($135,196.84), the disclosures are deemed accurate under 209 CMR 32.23(7) and Plaintiff would not be entitled to the extended four-year rescission period based on an inaccuracy in the TIL. [1]

---

[1] Plaintiff claims that the Annual Percentage Rate set forth on the Second Loan Truth-in-Lending Disclosure differs from the actual APR for the Second Loan by more than 1/8%. Plaintiff claims to have used the formula set forth in Appendix J to Regulation Z, 12 C.F.R. 226, however, neither the Complaint nor Plaintiff's answers to interrogatories "shows his work" in making these calculations. Without seeing Plaintiff's application of the loan terms to the Regulation Z formula, it is impossible to verify Plaintiff's allegations. In the absence of support for his method of calculating the APR, Plaintiff cannot prove that the APR set forth in the Second Loan Truth-in-Lending disclosure statement is inaccurate. As Plaintiff bears the burden of proving his allegations, this claim must fail.

### C. Recission of the Loans

In Count II, Plaintiff seeks rescission of the loan transaction as well as the return of all the points and fees paid in connection with the home loans to Fremont and a decree that they hold the property free and clear of the Mortgage.

The MCCCDA gives a consumer who grants a security interest in property used as his or her principal dwelling the right to rescind a mortgage loan transaction if the consumer is not provided the disclosures required by statute. Mass. Gen. Laws c. 140D § 10(a). A borrower may exercise the right to rescind the transaction until midnight of the third business day following the closing. *Id.* If, however, the required truth in lending disclosures are not provided, the right to rescind does not expire until four years after the date of consummation of the transaction. Mass. Gen. Laws c. 140D § 10(f). Because the Court deemed for the purposes of the MCCCDA that the disclosures provided to the Plaintiff with regard to both loans were accurate, Plaintiff does not have the right to rescind the loans under 140D.

### D. Good Funds Statute

Count VI of the Complaint alleges violation of Massachusetts's Good Funds Statute, M.G.L. c.183 §63B (the "Good Funds Statute"). The Good Funds Statute prohibits recording a mortgage prior to such time as the lender advances the proceeds of the loan to the mortgagor, the mortgagor's attorney or the mortgagee's attorney. M.G.L. c.183 § 63A. It is not necessary, however, for the mortgagor to have received the loan proceeds prior to the recording of the mortgage. In the present case, the Plaintiff contends that Fremont violated the statute because e loan documents contained a stated funding date of October 27, 2006 but the mortgages were recorded on October 25, 2006. Defendant contends that § 63B does not provide for a private right of action, and even if it does he complied with the plain language of the statute.

Shortcomings in the drafting of the statute have caused this Court to call into question whether a mortgagor even has the ability to raise a Chapter 183, s. 63B claim at all. *See Roberts v. Crowley,* 538 F.Supp.2d 413 (D.Mass, March 6, 2008) (Saylor, J.) ("It is somewhat doubtful whether § 63B creates an implied private right of action.") In general, "a judicially drawn implication of a private right of action from a statute that omits such a remedy occurs where the statute evidences a special legislative concern for an identifiable interest of a group of which the plaintiff is a member, and not merely a concern for the public generally, and if the injury falls within the area of concern." *Gottin v. Herzig*, 40 Mass.App.Ct. 163, 167, 662 N.E.2d 706 (1996). The statute here "appears to have been enacted in response to the intolerable problems that arose when it was learned that a now-defunct lender, Abbey Financial Inc., which filed for bankruptcy protection, had failed to fund several mortgage loans." *In re Patchell*, 336 B.R. 1, 10 (Bkrtcy.D.Mass.2005), citing *Horvath*, 2000 WL 33159239 at *1 & n. 1. "The statute appears intended to ensure that borrowers are not placed in the unfortunate situation of having a mortgage recorded against their property without receiving the benefit of the proceeds of the loan. *Roberts, 538 F.Supp.2d at* 418.

Here, as in Roberts, Plaintiff received the benefit of the proceeds of the loan and he has not alleged otherwise. The loan paid off plaintiff's prior mortgage indebtedness and approximately $23,400.00 in other debts. Because Section 63B does not provide a private right of action and because plaintiff has not alleged any harm as a result of the recording of the mortgage two days before the loan actually funded, this Count must fail.

### E. **MERS's Assignment of the Mortgage to Nationstar**

In Count VII of the Complaint, Plaintiff asserts that the mortgages to MERS were void at the outset and that the assignments of the mortgages by MERS were invalid. Defendant MERS

contends that the validity of MERS as a nominee mortgagee with the power to assign mortgages is well- established in Massachusetts.

This issue was recently discussed in detail by this court in *Lindsay v. Wells Fargo Bank,* Slip Copy, 2013 WL 5010977 (D.Mass., September 11, 2013). ' "MERS administers an electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans, serving as mortgagee of record and holding legal title to mortgages in a nominee capacity." *Rosa v. Mortg. Elec. Sys., Inc.,* 821 F.Supp.2d 423, 429 (D. Mass.2011) (quoting *In re Huggins,* 357 B.R. 180, 183 (D.Mass.2006)) (internal quotation marks omitted).' While MERS ordinarily is not a holder of a promissory note, MERS is authorized to act as an agent for each note holder during successive transfers of a mortgage due to its nominee status. *Culhane,* 826 F.Supp.2d at 368–69; *In re Lopez,* 446 B.R. 12, 18–19 (D.Mass.2011); *In re Marron,* 455 B.R. at 4.

MERS members, such as mortgage lenders, banks, and loan servicers, agree to pay annual fees in exchange for access to the MERS electronic registry. *Culhane,* 826 F.Supp.2d at 368. MERS members further agree to name MERS as "the mortgagee of record in the mortgage so that beneficial ownership and servicing rights of the note may be transferred among MERS members without the need to publicly record such assignments; instead assignments of the note are tracked by MERS' electronic system." *Rosa,* 821 F.Supp.2d at 429. MERS remains the mortgagee of record—serving as nominee for the lender and its successors and assigns—if the transfer of the beneficial interest of the note is between active MERS members. *See Kiah,* 2011 WL 841282, at *1 n. 1, *6, *8 (D. Mass. Mar.4, 2011) (holding assignment of mortgage by MERS valid). If the note is transferred to a nonmember, MERS' general practice is to execute

and record an assignment of the mortgage to the nonmember entity. *In re Moreno,* No. 08–17715–FJB, 2010 WL 2106208, at *1 (D. Mass. May 24, 2010).

Here, MERS's assignment of the mortgages to Nationstar is not a basis for dissolution of the mortgages. Plaintiff acknowledges that he gave mortgages to MERS as nominee for Fremont to secure the first and second loans. See, e.g., *Culhane v. Aurora Loan Servs. Of Neb.*, 826 F. Supp. 2d 352, 367-78 (D. Mass. 2011). MERS had assigned the first mortgage to Nationstar and continues to hold the second mortgage as nominee mortgagee. Under the mortgage, plaintiff granted the "power of sale" to MERS, as nominee for successors and assigns. MERS was therefore legally entitled to assign the mortgage does not provides a basis for plaintiff to void the mortgages.

### F. Chapter 93A Claim

Because there has been no violation of G.L Chapter 140D, Plaintiff's Chapter 93A claim based on violation of Chapter 140D cannot stand. As set forth above, Fremont's overstatement of the financing charge is deemed accurate under the statute and accompanying regulations. Because Fremont's disclosures were accurate, Fremont did not violate Chapter 140D. Because Fremont did not violate Chapter 140D, plaintiff's Chapter 93A claim based on violation of Chapter 140D loses its foundation.

## **Conclusion**

Accordingly, for the reasons set forth above, Fremont's Motion for Summary Judgment (Docket No. 23) and MERS's Motion for Summary Judgment (Docket No. 21) are hereby **GRANTED** as to all counts.

It is so **ORDERED**.

*/s/ Timothy S. Hillman*_____
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 30, 2013**